UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| GREGORY S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00532-JPH-MJD |
| | ) |
| FRANK BISIGNANO, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Claimant Gregory S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") in denying his application for Supplemental Security Income ("SSA") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1382.

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion. [Dkt. 16.] For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision finding that the Claimant was not disabled.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

## I. Background

Gregory applied for SSI on November 17, 2021, alleging an onset of disability as of August 10, 2021. [Dkt. 11-2 at 11.] His application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Shelette Veal ("ALJ") on May 18, 2023. [*Id.* at 11, 35.] On July 24, 2023, the ALJ issued a written opinion that Gregory was not disabled. [*Id.* at 11-23.] The Appeals Council then denied Gregory's request for review on September 5, 2024. [*Id.* at 2-5.] Gregory timely filed a Complaint on November 12, 2024, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 1382c. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not

disabled. 20 C.F.R. § 416.920(a)(4). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III. ALJ Decision

The ALJ first determined that Gregory had not engaged in substantial gainful activity since the alleged onset date of August 10, 2021. [Dkt. 11-2 at 13.] At step two, the ALJ found that Gregory had the following severe impairments: cervical spondylosis, lumbar spondylosis, bilateral hip disorder, obesity, depressive disorder, anxiety disorder, and posttraumatic stress disorder. [*Id.*]

3

At step three, the ALJ found that Gregory's impairments do not meet or equal a listed impairment during the relevant time period. [*Id.* at 14.] The ALJ then found that, during the relevant time period, Gregory had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can stand or walk for four hours and sit for six hours per eight-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance on level surfaces; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme heat, fumes[,] odors[,] dust[,] and gases; can perform detailed but not complex tasks; can have occasional contact with supervisors[,] coworkers[,] and public.

[*Id.* at 16.]

At step four, the ALJ found that Gregory was not able to perform his past relevant work during the relevant time period. [*Id.* 22.] At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Gregory was able to perform jobs that exist in significant numbers in the national economy. [*Id.*] Accordingly, the ALJ concluded that Gregory was not disabled. [*Id.* at 23.]

## IV. Discussion

Gregory raises three issues for the Court's review: (1) whether the ALJ's subjective symptom analysis was patently wrong; (2) whether the ALJ erred by finding that the psychological consultative examiner's opinion was "persuasive" but not addressing aspects of her opinion that undermine the ALJ's RFC determination; and (3) whether the RFC found by the ALJ accounts for all of Gregory's physical conditions. [Dkt. 13 at 1-2] The Court begins with the first issue, which is dispositive.

Gregory claims that he has severe chronic pain in his neck, back, sacroiliac joints, and hips, which significantly limits his ability to sleep, walk, bend, stretch, sit, and stand. [Dkt. 11-6 at 12-17.] As a result, he claims he cannot work, cannot engage in his previous daily activities, and

needs help with hygiene, bathing, and getting dressed. [*Id.*; dkt. 11-2 at 48.] The ALJ found that Gregory has chronic pain but that the pain is not as severe, persistent, or limiting as he claims. [Dkt. 11-2 at 17.] The ALJ explained that Gregory's medical records show that he told his doctor in October 2021 that he planned to get a commercial driver's license ("CDL"), that he "had not had any recent hospital or emergency room visits due to back pain," that he "never used a cane or other assistive device," that "his reports about the effectiveness of injections and other treatment are not entirely consistent," and that exam notes showed that he walked with a steady gait, was in no acute distress, and had no issues moving about the exam room. [*Id.* at 18-20.] Gregory argues that each of the ALJ's reasons for discrediting his claims about the severity, persistence, and limiting effects of his chronic pain are flawed.[2] [Dkt. 13 at 18-20.]

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. " Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that

---

[2] In his reply brief, Gregory argues that the ALJ also erred in conducting the subjective symptom analysis with respect to his mental health conditions. [Dkt. 18 at 12-14.] The Court need not address this argument because a party may not raise new issues in a reply brief. *See Mary W. v. Kijakazi*, 2021 WL 5168283, at 4 n. 2 (Oct. 14, 2021) (citing *Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011)). In any event, the Court finds that the ALJ erred in conducting the subjective symptom analysis with respect to Gregory's chronic pain conditions, and this error alone requires reversal.

the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Applying that standard to the facts of this case, the Court finds that the ALJ's subjective symptom analysis was patently wrong and requires reversal. As explained in more detail in the paragraphs below, the ALJ considered at least one factor that was wholly irrelevant to the subjective symptom analysis, *i.e.*, Gregory's aspiration in October 2021 to obtain a CDL, and she cherry-picked facts that supported her conclusion about the severity and persistence of his condition while failing to confront other facts that undermined her conclusion. Such an analysis is improper under well-established precedent. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (holding that an ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected"); *Myles v. Astrue*, 582 F.3d 672, 698 (7th Cir. 2009) (an ALJ may not limit her analysis to facts that support her conclusion while disregarding evidence that undermines it). As a whole, the ALJ's subjective symptom analysis clings to isolated facts and ignores conflicting evidence in order to paint an overly simplistic picture of Gregory's chronic medical conditions and the efficacy of his numerous treatments. Therefore, the ALJ's opinion must be reversed.

The Court begins with the ALJ's determination that Gregory's aspiration to obtain a CDL contradicts his reports about the severity, persistence, and limiting effects of chronic pain in his neck, back, sacroiliac joints, and hips. [*See* dkt. 11-2 at 20 ("the undersigned notes that, while the claimant alleges he is unable to work[,] treatment notes in late 2021 indicate a report that he

planned to get a CDL").] The ALJ cherry-picked this fact from a single medical record in October 2021. [Dkt. 11-7 at 26.] Following that appointment, Gregory's medical records show that he continued to experience severe chronic pain in the lumbar region, the cervical region, the sacroiliac joints, and both hips through at least April 2023. [*See generally* dkts. 11-7, 11-8.] There is no evidence that he was physically capable of obtaining a CDL during that period, nor is there evidence that he worked as a commercial driver during that period. While an ALJ may consider a claimant's actual daily activities in conducting a subjective symptom analysis, *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), an ALJ may not rely upon a claimant's unrealized career aspirations or his deferred hopes about what he would like to accomplish if he were not disabled. The desire to work, without more, does not contradict an individual's claim that he is unable to work due to a disability. As the Seventh Circuit Court of Appeals has previously explained,

> Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition. In any case, the ALJ here provided no support for his conclusion that looking for a new job was inconsistent with Ghiselli's disability claim. This is not a situation where the claimant told prospective employers that her pain issues were in the past or otherwise denied suffering from the symptoms that formed the basis for her disability claim.

*See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). Here, the record does not even show that Gregory was looking for work. Instead, one of his medical records simply states, "Planning to get CDL." [Dkt. 11-7 at 26.] This evidence, without more, does not undermine his claims about the severity, persistence, and limiting effects of his condition, and the ALJ erred in finding otherwise.

Many of the ALJ's other reasons for discrediting Gregory's claims fare no better. The ALJ reasoned that Gregory's condition was not as severe as he alleged because he did not have any recent hospital or emergency room visits. [Dkt. 11-2 at 20.] However, Gregory had frequent appointments with a primary care physician, a pain specialist, a chiropractor, and a physical

7

therapist during this period. [*See generally* dkts. 11-7, 11-8.] He received numerous procedures, such as radiofrequency ablation, nerve blocks, and injections. [*e.g.*, dkt. 11-7 at 186, 193, 218, 229, 237, 246, 279, 289.] He was prescribed anti-inflammatory medication (naproxen), muscle relaxers (tizanidine), and opioid medication (Norco and oxycodone). [*Id.* at 27, 222.] It is unclear what additional treatment the ALJ believes Gregory would have needed from a hospital or emergency room if his symptoms were as severe as he alleged; indeed, it is unclear why the ALJ believes that an emergency room is an appropriate place to receive treatment for a chronic condition. Given Gregory's consistent medical care for his well-documented chronic conditions, the ALJ's reliance on a lack of emergency room or hospital visits during the period of alleged disability was improper.

The ALJ noted that Gregory underwent radiofrequency ablation of his lumbar region in March 2022, that this treatment provided him with 90% relief in that area, but that a report from a consultative medical exam in October 2022 stated that this procedure provided no relief. [Dkt. 11-2 at 18 (citing dkt. 11-7 at 259).] The ALJ relied upon this inconsistency in discrediting Gregory's claims. [*Id.*] However, the ALJ did not consider Gregory's more nuanced description of the ablation during his disability hearing:

> So, the ablation slightly helped but all it – it just kind of numbed up that area, and it let me know where I'm having pain in other spots. It's a cycle that's going to have to keep being repeated too as well because of my age. My nerve endings will grow back sooner than most people, and I'll have to keep having the same surgery over and over again.

[*Id.* at 49.] Gregory's testimony that pain relief in one area of his body typically corresponds with increased pain in other areas is supported by his medical records. [*See*, dkt. 11-8 at 23 ("He has pain in the bilateral sacroiliac joints that is more noticeable since his hip pain is improved.") (pain specialist on March 13, 2023).] His medical records also show that despite the benefit of the

8

radiofrequency ablation, "[h]e still does have some residual muscle pain and will likely need trigger point injections." [Dkt. 11-8 at 9 (pain specialist on January 9, 2023); *see also* dkt. 11-7 at 218 ("Patient here for follow up after bilateral lumbar RFA, Rates Pain at a 3. He complains of muscle stiffness on the left lumbar side, right hip pain, and thoracic pain. He is interested in other procedures for this pain.") (pain specialist on May 3, 2022), 13 ("He does report noticing increased pain in bilateral lower back") (pain specialist on February 13, 2023).] The ALJ did not address Gregory's well-documented residual pain in his low back immediately following the ablation, that the pain appears to have increased in the months following the ablation, or that pain relief in one area of his body typically corresponded with greater pain in other areas. [*See* dkt. 11-2 at 18-19 (summarizing Gregory's medical history following ablation procedure).] The ALJ erred by simply ignoring this evidence and not confronting these complex and dynamic aspects of Gregory's chronic condition.

      The ALJ reasoned that Gregory's condition was not as severe as he alleged because he did not use a cane or other assistive device. [Dkt. 11-2 at 20.] But when the ALJ asked Gregory during the hearing whether he had ever used a cane, he answered, "No, not yet. Really looking into the cane thing though. With my hips, I walk with a limp now and my balance is messed up[.]" [*Id.* at 45.] Rather than confront Gregory's testimony that he was considering obtaining a cane due to chronic hip pain, a fact that if true would tend to undermine the ALJ's ultimate conclusion, the ALJ simply ignored this testimony and did not incorporate it into her written opinion.

      The errors described above show that the ALJ's subjective symptom analysis was patently wrong and require reversal. The Court takes no issue with the ALJ's observation that certain findings from Gregory's medical records contradict his reports about the severity, persistence, and limiting effects of his chronic pain. [*See, e.g.*, dkt. 11-2 at 18 (noting that during a consultative

9

exam in February 2022, Gregory "had a normal gait and was able to get on and off the exam table without difficulty. He was able to walk on his heels and toes, hop and squat and had 5/5 strength").] But the Court is not convinced that the ALJ would have reached the same outcome if not but for the numerous errors described above. See *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (an error is only harmless when the court is convinced that the ALJ would have reached the same outcome had it not committed the error). Accordingly, the Court declines to find that these errors were harmless and instead finds that they require reversal. Given these circumstances, the Court need not address whether Gregory has shown reversible error on the remaining two issues he raises in his briefs.

## V. CONCLUSION

For the reasons described above, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision that Gregory was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure.

Dated:  29 SEP 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.